# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

MARISSA SKINNER,

    Plaintiff,

v.

GEICO CASUALTY INSURANCE COMPANY,

    Defendant.

Case No. 2:16-cv-00078-APG-NJK

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (3) DIRECTING PARTIES TO FILE A MOTION TO SEAL IF WARRANTED**

(ECF Nos. 34, 37)

    Plaintiff Marissa Skinner was injured in a car accident involving an underinsured driver. Skinner was driving a car owned by Barbara Cutler, who was insured under a policy issued by defendant GEICO Casualty Insurance Company. Skinner made a claim as an insured under Cutler's policy for underinsured benefits. GEICO's top offer to settle the claim was $51,000. Skinner rejected that offer and brought suit alleging breach of contract, unfair claims practices, bad faith, and negligent misrepresentation. Skinner moves for summary judgment on her breach of contract claim. GEICO moves for summary judgment on Skinner's extra-contractual claims. I deny Skinner's motion, grant in part GEICO's motion, and direct any party seeking to keep Skinner's filings under seal to file a properly supported motion to seal.

**I. BACKGROUND**

    Skinner was injured in an auto accident on July 19, 2014. ECF No. 35-2. There is no dispute that the other driver was at fault for failing to yield. *Id.* There also is no dispute that Skinner is an insured under a GEICO policy issued to Cutler, who owned the vehicle that Skinner was driving at the time of the accident. ECF Nos. 36-2; 40-1 at 3-4. Cutler's policy has an uninsured/underinsured policy limit of $100,000 per person. ECF No. 36-2.

    Skinner went to the emergency room complaining of pain in her right hand, right ankle, and neck. ECF No. 35-11 at 9, 12. She also complained of pain in her abdomen. *Id.* at 10. X-rays

showed no broken bones, and a CT scan showed no acute intra-abdominal injury. *Id.* She was advised to use over-the-counter pain medication and released. *Id.* at 10, 13.

In September 2014, Skinner's counsel contacted GEICO, requested a copy of the insurance policy, and inquired about the policy limits. ECF No. 35-4. GEICO responded by requesting copies of medical documentation and lost wage verification. ECF No. 35-6. GEICO also requested Skinner sign and return authorizations to obtain medical and wage information. *Id.* According to GEICO, Skinner never returned the medical authorization. ECF Nos. 28 at 2; 40-2 at 9.

The at-fault driver had a policy limit of $15,000 per person for bodily injury, with a total of $30,000 per accident. ECF No. 35-5. GEICO was aware in February 2015 that the at-fault driver's insurer was admitting liability and that there was a "10k" limit issue. ECF No. 38-3 at 17. In June 2015, the at-fault driver's insurer sent GEICO the declaration page showing the applicable policy limits. ECF No. 35-10. The collision portion of the claim for damage to Cutler's vehicle was closed on July 9, 2015. ECF Nos. 35-3 at 16; 49-4 at 8.

On September 1, 2015, Skinner's attorney faxed a demand letter to GEICO. ECF No. 35-11; 35-12; 35-13; 35-14. The letter identified $48,173.97 in medical specials. *Id.* Skinner's counsel demanded the $100,000 underinsured policy limit of Cutler's policy. *Id.* at 5. Attached to the demand letter were medical records from various providers Skinner visited following the accident. *Id.* at 7-40; ECF No. 35-12 at 1-20. For example, Skinner was treated by Dr. Jordan Anderson. ECF No. 35-12 at 21-31. Dr. Anderson stated Skinner reported headaches and pain in her neck, back, and right foot, none of which she had experienced prior to the accident. *Id.* at 23-24. Dr. Anderson diagnosed a right foot contusion; muscle spasms; cervical, thoracic, and lumbosacral sprain/strain; and post-traumatic headaches. *Id.* at 35-12. Dr. Anderson recommended chiropractic treatment, trigger point therapy, electrical muscle stimulation, hot and cold packs, and therapeutic exercises. *Id.* at 26-27.

The demand letter also attached records from Dr. Jorg Rosler from the Interventional Pain and Spine Institute. ECF No. 35-13 at 16-22. Dr. Rosler's review of an MRI showed disc bulging

at C4-5 and C5-6, and disc protrusions at L4-5 and L5-S1 with some spinal canal stenosis at L4-5. *Id.* at 17. Dr. Rosler recommended injections and to continue chiropractic treatment with Dr. Anderson. *Id.* Skinner thereafter received injections from Dr. Rosler. *Id.* at 18-22; ECF No. 35-14 at 1-10. In June 2015, Skinner underwent radiofrequency ablation of the right C5, C6, and C7. ECF No. 35-14 at 5. At her last treatment in July 2015, Skinner reported her pain at 1 out of 10 and that she was symptom-free in her lumbar spine. *Id.* at 9. She was discharged from Dr. Rosler's care at maximum medical improvement. *Id.* at 10. Although Skinner received treatment from other providers before this demand letter was sent, the letter did not refer to those providers or attach related medical records. ECF No. 49-3 at 5-6. The letter also did not include all bills for the Neck and Back Clinic. *Id.* at 10. There was no indication in the letter or the attached records that Skinner was going to seek future treatment. ECF Nos. 35-11; 49-3 at 14.

GEICO's records do not show it received the September 1 demand letter. ECF No. 35-3 at 15-16. However, the fax cover sheet shows it was sent to GEICO's general fax number. ECF No. 44-2 at 11.

On October 12, 2015, Skinner's attorney contacted GEICO and stated he had sent a demand over thirty days ago but had not received a response. ECF No. 35-3 at 15. GEICO responded that it had no record of the demand but that a new adjuster would be assigned to handle Skinner's claim. *Id.* The next day, GEICO employee Daliz Rodriguez contacted Skinner's attorney and apologized for the lack of response, stating that GEICO had not received the September 1 demand. *Id.* Rodriguez requested a two-week extension to evaluate the claim and make an offer. *Id.* Skinner's counsel re-sent the demand letter and attachments but rejected Rodriguez's request for an extension of time. *Id.* Rodriguez sent a letter to Skinner's counsel requesting confirmation of the at-fault driver's policy limits and any settlement amount with the at-fault driver. ECF No. 35-15.

Despite counsel's refusal to grant an extension, Rodriguez reviewed the claim. ECF No. 35-3 at 6-7. Rodriguez valued Skinner's claim at $45,065.97 in medical specials, discounting the demand letter's full requested amount because the bills provided did not establish some of the

claimed amounts (specifically for the Neck and Back Clinic). ECF Nos. 35-18; 45-2 at 4. Rodriguez valued Skinner's pain and suffering damages at a range of $14,000 to $17,000. ECF No. 35-18. Rodriguez thus identified a negotiation range of $49,065.97 to $52,065.97. *Id.* On October 19, he made an offer of $49,100 to settle Skinner's claim. ECF Nos. 35-3 at 67; 35-19. However, Skinner had already filed this lawsuit on October 15, 2015. ECF No. 35 at 3.

During an October 27 phone call with Skinner's counsel, Rodriguez raised the offer to $51,000, and sent an offer letter in that amount that same day. ECF Nos. 35-3 at 3-4; 35-20. Rodriguez followed up on the offer on December 8. ECF No. 35-22. GEICO did not receive a response to its last few letters to Skinner, and Skinner did not respond to several letters asking her to complete a Medicare beneficiary form. ECF No. 38 at 3. Skinner filed an amended complaint on December 2, 2015. ECF No. 1-1. GEICO was served with the summons, complaint, and amended complaint approximately two weeks later. ECF Nos. 35 at 4; 35-24.

After suit was filed, Skinner disclosed she was seeking compensation for additional medical specials, for a revised total of $62,780.02. ECF No. 40-6 at 3; *see also* ECF No. 45-3 at 9, 20-23 (identifying additional treatment for neck pain starting in October 2015 through February 2016). She also claimed she was entitled to future medical treatment and future pain and suffering. ECF No. 40-6 at 4.

In October 2016, Skinner was evaluated by Dr. Hugh Selznick. ECF No. 45-3. At that evaluation, Skinner reported she continued to experience sporadic neck pain and related headaches. ECF No. 45-3 at 1-4, 6. Dr. Selznick attributed Skinner's care through December 2014 as accident-related, but opined that Dr. Rosler's care "should in no way be attributed to [the] subject accident." *Id.* at 7. He noted that Skinner reported to him that a dentist recently suggested that her headaches may be the result of grinding her teeth. *Id.* at 9.

GEICO has not raised or lowered its offer of $51,000 to settle Skinner's claim in response to information obtained through discovery. GEICO has not paid Skinner any amount on her underinsured claim. ECF No. 40-1 at 6.

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

## III. SKINNER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 37)

Skinner argues that although GEICO admits she is an insured and has a valid underinsured motorist claim, GEICO refuses to pay anything on the claim despite offering what Skinner characterizes as the undisputed amount of $51,000. Skinner also argues that by negotiating to settle the claim within a range, GEICO breached the contract by placing its own interests above its insured's. Finally, Skinner argues GEICO breached the contract when it closed Skinner's claim and denied that it had received the September 1 demand letter.

GEICO responds that the value of Skinner's claim is disputed, and thus there is no undisputed amount which GEICO is contractually obligated to pay. GEICO argues neither the policy nor Nevada law requires an insurer to pay the amount of a pre-litigation settlement offer on an uninsured motorist claim to avoid breaching the insurance contract. GEICO argues that because bodily injury claims are subjective and there are questions about what injuries are causally related to the accident, there is no undisputed amount that GEICO is contractually required to pay. GEICO also argues there is no policy provision regarding GEICO closing a

claim or erroneously losing track of a demand letter, so it cannot be liable on a breach of contract theory on these allegations either.

Under Nevada law, a plaintiff asserting a breach of contract claim must show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920-21 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)). The insurance contract provides that GEICO will provide uninsured motorist coverage and "will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle . . . ." ECF No. 40-10 at 11 (emphasis omitted).[1]

Viewing the facts in the light most favorable to GEICO, and assuming without deciding that an insurer's failure to pay an undisputed amount of an underinsured motorist claim would breach the policy, issues of fact remain as to whether there was any undisputed amount in this case prior to the time the amended complaint was filed. A reasonable jury could conclude that GEICO's evaluation of a range of amounts to fully negotiate the claim (including pain and suffering) is not equivalent to a determination that any particular amount of that claim is undisputed. Skinner potentially had not fully complied with her duty to cooperate. *See* ECF No. 40-2 at 9 (GEICO's Rule 30(b)(6) witness testifying that Skinner did not return a medical authorization as requested). There is no evidence GEICO had investigated whether Skinner had preexisting injuries or whether all of the medical treatments were causally connected to the accident (Selznick later opined some were not). And the amount of damages for pain and suffering is inherently subjective. *See Stackiewicz v. Nissan Motor Corp. in U.S.A.*, 686 P.2d 925, 932 (Nev. 1984). A reasonable jury could find that the amounts GEICO offered were for settlement purposes, not because there were undisputed amounts owed. I therefore deny Skinner's motion based on her argument that GEICO's settlement offers were undisputed amounts that GEICO was contractually obligated to pay.

---

[1] The policy applies equally to operators of underinsured motor vehicles. *Id.*

To the extent there may be a basis to conclude a certain amount of medical specials became undisputed at some point after the amended complaint was filed, Skinner did not move to supplement the amended complaint to add a claim that GEICO breached the policy at that point. *See* Fed. R. Civ. P. 15(d). Even if that claim could be considered part of this case, Skinner did not move for judgment on that undisputed amount. She does not identify in her motion what that amount would be or when that amount became undisputed. Thus, GEICO has been deprived of the opportunity to respond by explaining why that amount was disputed or why it would be prejudiced by paying the allegedly undisputed amount. *See* Nev. Admin. Code § 686A.675(7) ("Except for a claim involving health insurance, any case involving a claim in which there is a dispute over any portion of the insurance policy coverage, payment for the portion or portions not in dispute must be made notwithstanding the existence of the dispute where payment can be made without prejudice to any interested party.").

Skinner argues that by negotiating to settle the claim within a range and offering less than the highest amount, GEICO placed its own interests above its insured's. But that is an extra-contractual claim, not a breach of contract claim. *See Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324-26 (Nev. 2009) (en banc); *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 603 (Nev. 1998), *opinion modified on denial of reh'g*, 979 P.2d 1286 (Nev. 1999). Skinner does not point to any provision in the contract (as opposed to a duty imposed by law) that requires GEICO to consider its insured's interests as equal to its own. Likewise, Skinner does not identify any contractual provision GEICO breached by closing and then reopening the claim or by denying that it had received the September 1 demand letter. I therefore deny Skinner's motion.

**IV. GEICO's MOTION FOR SUMMARY JUDGMENT (ECF No. 34)**

    **A. Bad Faith**

GEICO argues it did not act in bad faith when it negligently failed to respond to the September 1 demand letter. Rather, GEICO argues, it was unaware of that letter until Skinner's counsel called in mid-October inquiring about the lack of response. GEICO contends that once it

1 was aware of the claim, it responded within six days with an offer.  Additionally, GEICO argues
2 that it cannot be liable for bad faith because the evidence shows this is a good
3 faith dispute over valuation of Skinner's claim.  GEICO contends there is no evidence it knew or
4 should have known that it lacked a reasonable basis for its valuation of Skinner's claim.

Skinner responds that GEICO acted in bad faith by failing to pay the undisputed value of her claim after GEICO valued her claim at the top end of its range of $52,065.97.  Skinner also contends this is not a good faith dispute over value because GEICO failed to investigate or consider her permanent injuries or the fact that she was still treating for her injuries, and GEICO did not reevaluate its offer after receiving evidence of additional medical expenses.  Additionally, Skinner argues that the policy's requirement that GEICO and the insured reach an agreement as to the amount of the underinsured motorist claim before GEICO will pay places GEICO's interests ahead of its insured's.

Insurers have a special relationship with their insureds that arises under the implied covenant of good faith and fair dealing. *Miller*, 212 P.3d at 324.  "A violation of the covenant gives rise to a bad-faith tort claim." *Id.*  Bad faith in the insurance context means, among other things, "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Id.*

*1. Failure to Pay Policy Limits*

To establish a claim for bad faith based on a denial of payment on all or part of a claim, a plaintiff must establish that "(1) her claim was denied, (2) the denial was unreasonable, and (3) the insurer knew it lacked a reasonable basis to deny the claim, or acted with reckless disregard as to the unreasonableness of the denial." *Sherwin v. Infinity Auto Ins. Co.*, No. 2:11-cv-00043-APG-GWF, 2013 WL 5918312, at *3 (D. Nev. Oct. 31, 2013), *aff'd*, 639 F. App'x 466 (9th Cir. 2016).  "The key to a bad faith claim is whether or not denial of the coverage was reasonable." *Id.* (quotation omitted).  Consequently, if the insurer had a reasonable basis for its valuation, there can be no finding of bad faith as a matter of law. *Id.*

Even viewing the facts in the light most favorable to Skinner, no reasonable jury could find GEICO acted in bad faith. The evidence shows a genuine dispute over the value of Skinner's claim. In its pre-litigation offer, GEICO accounted for all properly supported medical specials and assigned a range of values for pain and suffering. Because the value assigned to pain and suffering is subjective, there is no evidence that GEICO's offer was unreasonable or that GEICO knew or should have known it lacked a reasonable basis to offer the amount it did. Skinner contends GEICO failed to account for permanent injuries or future treatment, but the September 1 demand did not mention future treatment and it appeared from the medical records that Skinner had stopped treating.[2]

As with the breach of contract claim, Skinner did not amend or supplement her complaint to add claims related to GEICO's alleged post-amended-complaint conduct in this litigation. Thus, GEICO's purported refusal to reconsider its offer in light of additional medical specials revealed through discovery is not a part of this case. Even if it were, other evidence in discovery suggested not all of Skinner's injuries were causally related to the accident. GEICO thus had an evidentiary basis to both raise or lower its offer. In sum, this portion of Skinner's bad faith claim is a genuine dispute over value, and no reasonable jury could find bad faith on GEICO's valuation of the claim. I therefore grant GEICO's motion for summary judgment on this portion of Skinner's bad faith claim.

### 2. Giving Equal Consideration to Insured's Interest

Skinner argues GEICO acted in bad faith by not placing its insured's interests equal to its own in two respects: (1) by failing to pay the undisputed value of her claim after GEICO valued her claim at $52,065.97 at the top end of its range, and (2) by requiring the insured to agree with

---

[2] Skinner presents an affidavit from her own attorney claiming that he told Rodriguez during an October 13, 2015 phone call that Skinner was still treating. ECF No. 44-8 at 3. Even if I considered this affidavit over GEICO's objection, that does not raise a triable issue. Skinner's counsel states he told Rodriguez that Skinner "was still receiving medical treatment and the value of her permanent spinal injuries related to this incident" exceeded the policy limit. *Id.* Given the lack of specificity as to what treatment was being continued or what spinal injuries were permanent, there is no basis to conclude GEICO unreasonably valued the claim or knew or recklessly disregarded that its valuation was unreasonable.

GEICO on the amount of the underinsured claim before GEICO will pay. GEICO does not directly respond to these arguments, but it generally argues that nothing in Nevada law requires an insurer to make partial payment on a disputed uninsured motorist claim.

The nature of the relationship between the insurer and its insured "requires that the insurer adequately protect the insured's interest." *Powers*, 962 P.2d at 603. "Thus, at a minimum, an insurer must equally consider the insured's interests and its own." *Id.*

"When there is a genuine dispute regarding an insurer's legal obligations," I may "determine if the insurer's actions were reasonable." *Miller*, 212 P.3d at 329-30. In making this determination, I evaluate "the insurer's actions at the time it made the decision." *Id.*

As discussed above, the range of values GEICO calculated was for purposes of settling Skinner's claim. It does not necessarily reflect an undisputed amount to which Skinner was entitled. GEICO therefore did not breach its duty of good faith by failing to tender the top end of the range (or even the bottom end of the range), as Skinner asserts. Moreover, there is no Nevada law that would suggest to an insurer that in evaluating an underinsured claim, particularly one that includes subjective evaluation of pain and suffering, an insurer breaches its duty of good faith if it does not offer its insured the top end of the range of possible values it generates for settlement purposes. Considering GEICO's actions at the time it made its offer, and in the absence of Nevada authority to the contrary, its decision to offer Skinner an amount within a range of possible values was reasonable.

Indeed, GEICO has presented evidence that Nevada's Division of Insurance previously has found an insurer does not violate its duty under Nevada Administrative Code § 686A.675(7) by failing to pay a settlement offer as the undisputed portion of an uninsured motorist claim. ECF No. 49-9. That section provides that in "any case involving a claim in which there is a dispute over any portion of the insurance policy coverage, payment for the portion or portions not in dispute must be made notwithstanding the existence of the dispute where payment can be made without prejudice to any interested party." The Division of Insurance appears to have interpreted the word "portion" in the phrase "any portion of the insurance policy coverage" to refer to the

type of coverage (meaning medical, collision, or underinsured) rather than the amount in dispute for a particular type of coverage. ECF No. 49-9. The Division thus concluded that the amount the insurer offered to settle the disputed uninsured motorist claim "did not constitute an undisputed portion of the claim" within § 686A.675(7)'s meaning. *Id.*

Even if this accurately describes an insurer's obligations under § 686A.675(7), it does not necessarily fulfill the insurer's good faith obligations under the common law. The Supreme Court of Nevada has not addressed these questions, and I need not do so here. It suffices to say that in this case, no reasonable jury could find GEICO acted in bad faith by not paying Skinner the highest amount by which GEICO internally valued the claim while generating an offer of settlement.

Finally, Skinner's argument that GEICO violated the duty of good faith by requiring Skinner to agree to a total amount of the underinsured claim before GEICO would pay any amount on the claim fails for the reasons already discussed. While there may be circumstances where an insurer violates its duties by not paying an undisputed amount even if the remainder of the claim is disputed (and thus the insurer cannot require the insured to agree to settle the entire claim before paying undisputed portions), those circumstances do not exist here. GEICO's range of values was prepared for settlement, not as a reflection of undisputed amounts owed. Skinner has not presented evidence of an undisputed amount GEICO refused to pay. I therefore grant GEICO's motion for summary judgment on Skinner's bad faith claim.

**B. Unfair Claims Practices**

GEICO argues that an unfair practices claim requires a showing that a GEICO officer, director, or department head knowingly permitted the unfair practice, and Skinner has not made that showing. GEICO also argues there is no evidence it engaged in an unfair practice.

Skinner responds that GEICO ratified its employees' actions because its Rule 30(b)(6) witness was questioned during a deposition about it employees' conduct, but GEICO did nothing afterwards to remedy the alleged violations. Skinner also contends she has presented evidence that GEICO: (1) failed to timely respond to the September 1 demand; (2) failed to pay on

Skinner's claim under her own GEICO policy;[3] (3) requested Skinner provide information that was already in its possession; (4) refused to pay the undisputed amount of the claim; (5) failed to consider aspects of her claim such as future treatment and permanent injuries; and (6) required her to file suit to recover the undisputed portions of her claim.

Nevada Revised Statutes § 686A.270 provides:

> No insurer shall be held guilty of having committed any of the acts prohibited by NRS 686A.010 to 686A.310, inclusive, by reason of the act of any agent, solicitor or employee not an officer, director or department head thereof, unless an officer, director or department head of the insurer has knowingly permitted such act or has had prior knowledge thereof.

Skinner has not presented evidence raising a genuine dispute that a GEICO officer, director, or department head knowingly permitted the practices about which she complains. *See Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1255 (D. Nev. 2016); *Yusko v. Horace Mann Servs. Corp.*, No. 2:11-cv-00278-RLH-GWF, 2012 WL 458471, at *4 (D. Nev. Feb. 10, 2012). Skinner argues that GEICO's Rule 30(b)(6) witness became aware of the alleged violations at her deposition yet GEICO has not redressed them, thereby ratifying the conduct. However, the statute's unambiguous language requires prior knowledge, not after-the-fact ratification. I therefore grant GEICO's motion for summary judgment on the unfair practices claim.

### C. Punitive Damages

GEICO argues that if its motion is granted as to the bad faith claim, then punitive damages are not available as a matter of law on Skinner's other claims. GEICO also argues that even if the bad faith claim survives, there is no evidence to support a punitive damage award. Skinner responds that a reasonable jury could find malice based on the number of statutory violations,

---

[3] In her opposition, Skinner refers to a claim she allegedly made under her own GEICO policy in May 2016. However, that is not a part of this case. The amended complaint refers only to Skinner's claim under Cutler's policy. ECF No. 1-1. Indeed, it could not be part of the amended complaint because Skinner did not make a claim on her own policy until months after the amended complaint in this case was filed. Skinner has not moved to amend or supplement to add allegations about GEICO's alleged misconduct in relation to its handling of her claim under her own policy.

GEICO's misrepresentations, the unreasonable delay in payment, and the policy's language compelling insureds to agree to an amount of damages or be forced to file suit.

Because I have granted judgment in GEICO's favor on the only claims that could support a punitive damages award, I grant GEICO's motion as to punitive damages as well. Moreover, there is insufficient evidence to support a punitive damages award in this case. *See United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989) ("Nevada follows the rule that proof of bad faith, by itself, does not establish liability for punitive damages. To recover punitive damages, plaintiff must also show evidence of 'oppression, fraud, or malice, express or implied.'" (quoting Nev. Rev. Stat § 42.010, internal citation omitted)).

**D. Negligent Misrepresentation**

GEICO argues that Nevada law does not permit an insured to bring a negligence claim against her insurer for denying or delaying payment because the insurer owes no duties beyond the contractual requirements and the duty of good faith. Skinner responds that her negligent misrepresentation claim is not based on GEICO's delay or denial of payment, but rather is based on GEICO (1) denying it received the September 1 demand letter, and (2) representing in the insurance policy that it would pay amounts owed to the insured by a third party under the underinsured motorist coverage.[4]

Nevada has adopted the Restatement (Second) of Torts definition of negligent misrepresentation. *See Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978). Under this theory of liability:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the

---

[4] Skinner also argues GEICO gave a false reason for its denial of Skinner's claim under her own policy. The amended complaint refers only to Skinner's claim under Cutler's policy. ECF No. 1-1. Consequently, GEICO's conduct in relation to Skinner's claim under her own policy in May 2016 is not a part of this case. Any misrepresentations GEICO made in relation to that claim could not be part of the amended complaint because Skinner did not make a claim on her own policy until months after the amended complaint was filed. Skinner has not moved to amend or supplement to add allegations about GEICO's alleged misconduct in relation to its handling of her claim under her own policy. If Skinner wants to pursue claims against GEICO for its alleged mishandling of that claim, she will have to do so in another case.

guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) Torts § 552 (1977); *see also Bill Stremmel Motors, Inc.*, 575 P.2d at 940.

### 1. September 1 Letter

Viewing the evidence in the light most favorable to Skinner, a genuine dispute remains about whether GEICO received the September 1 demand but told Skinner's counsel it did not. Skinner has presented evidence her counsel sent the letter to GEICO's fax number. Thus, a reasonable inference is that GEICO received it. GEICO argues there is no evidence that the particular employees who told Skinner's counsel that GEICO had not received the letter in fact received it prior to it being re-sent. However, GEICO presents no legal authority that an entity escapes liability for negligent misrepresentation if its employee conveys inaccurate information so long as that particular employee did not know it was inaccurate. GEICO has not shown it is entitled judgment as a matter of law, so I deny its motion on this portion of the negligent misrepresentation claim.[5]

### 2. Misrepresentations in the Policy

Skinner contends the policy itself misrepresents that GEICO will pay underinsured motorist claims. GEICO responds that there is no misrepresentation in the policy because GEICO will pay upon Skinner proving the amount she is entitled to recover.

There is no genuine dispute in relation to this claim. "[A] misrepresentation as to future performance cannot be negligent because such a statement is either fraudulent, i.e., the person never held that intention at the time he made the statement, or it was not a misrepresentation at all, the person simply later failed to perform as promised." *Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010). Thus, GEICO is correct that there is no evidence of a misrepresentation in the policy because there is no evidence that at the time of contracting,

---

[5] It is unclear how Skinner justifiably relied to her detriment on this alleged misrepresentation. GEICO employees told Skinner's counsel they did not receive the demand and requested he resubmit it. He did so, and GEICO evaluated the claim and made an offer in six days. Damages based on this alleged misrepresentation may be difficult to prove at trial. However, GEICO did not argue in its motion that Skinner cannot show reliance or damages, so Skinner has not had an opportunity to address these issues.

GEICO never intended to pay. Indeed, GEICO has offered to pay $51,000. Skinner's dispute with GEICO's valuation of her claim does not raise a genuine dispute that GEICO negligently (or intentionally) misrepresented its willingness to pay valid claims.[6] I therefore grant GEICO's motion on this portion of the negligent misrepresentation claim.

## V. SEALED DOCUMENTS

Skinner filed under seal her motion for partial summary judgment, an erratum, her response to GEICO's motion for summary judgment, and her reply brief. ECF Nos. 37, 40, 44, 48. Skinner did not file a motion to seal these documents. LR IA 10-5.

Generally, the public has a right to inspect and copy judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Such records are presumptively publicly accessible. *Id.* Consequently, a party seeking to seal a judicial record bears the burden of overcoming this strong presumption. *Id.* In the case of dispositive motions, the party seeking to seal the record must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process. *Id.* at 1178-79. Among the compelling reasons which may justify sealing a record are when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Id.* at 1179. However, avoiding a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. *Id.*

I will allow the filings to remain sealed temporarily. If any party determines that any portion of these filings should remain sealed, that party must file a motion to seal along with a proposed redacted version of the filing within 14 days of the date of this order. Any motion to seal must set forth compelling reasons to support sealing those portions. Failure to file a motion to seal will result in these documents being unsealed.

---

[6] It is also unclear how Skinner could have relied to her detriment on the policy language because the policy was issued to Cutler, not to Skinner. There is no evidence that Skinner reviewed or knew about the policy language before she drove Cutler's car.

**VI. CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff Marissa Skinner's motion for summary judgment **(ECF No. 37) is DENIED**.

IT IS FURTHER ORDERED that defendant GEICO Casualty Insurance Company's motion for summary judgment **(ECF No. 34) is GRANTED in part**. The motion is granted as to Skinner's claims for bad faith and unfair claims practices, as well as related punitive damages. The motion is also granted as to Skinner's negligent misrepresentation claim to the extent it is based on an alleged misrepresentation in the policy. The motion is denied as to Skinner's negligent misrepresentation claim to the extent it is based on the alleged misrepresentation that GEICO did not receive the September 1 demand letter.

IT IS FURTHER ORDERED that if any party determines that any portion of ECF Nos. 37, 40, 44, or 48 should remain sealed, that party must file a motion to seal along with a proposed redacted version of the filing. Any motion to seal must set forth compelling reasons to support sealing those portions. If a motion to seal is not filed by any party within 14 days of the date of this order, ECF Nos. 37, 40, 44, and 48 shall be unsealed.

DATED this 26th day of February, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE